UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

IN RE:

REDFISH COMMONS, LLC                                CASE NO. 20-10553
           DEBTOR                                                              CHAPTER 11

## MEMORANDUM OPINION

Debtor Redfish Commons, LLC's principal asset is a strip shopping center in Gonzales, Louisiana ("the Property"),[1] claimed to be worth $3,334,105.65 when it filed chapter 11 in August 2020.[2] The Property is collateral for First Bank and Trust's ("FBT") prepetition loan of $2,845,733.00.[3]

FBT has moved for relief from the automatic stay to foreclose on the Property on two grounds: 1) for cause under 11 U.S.C. § 362(d)(1); and 2) because the Debtor lacks equity in the Property and is unable to propose an effective plan of reorganization under 11 U.S.C. § 362(d)(2).[4] FBT also seeks abandonment of the estate's interest in the Property. Alternatively, FBT wants the case converted to a chapter 7 liquidation.

---

[1] Voluntary Petition, ¶7 [P-1]. The Bankruptcy Code defines *single asset real estate* as

> real property constituting a single property or project, other than residential real property with fewer than 4 residential units, which generates substantially all of the gross income of a debtor who is not a family farmer and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental thereto.

11 U.S.C. §101(51B).

[2] Amended Schedule A, P-31, ¶ 55.

[3] Proof of Claim 3, FBT Exhibit 4.

[4] FBT's Amended Motion for Relief from Stay [P-78].

## I.  FACTS

FBT's state court lawsuit to foreclose on the Property in late 2019 also sought the appointment of a keeper to manage the Property pending its sale.[5]  The state court appointed as keeper H.G.I., LLC ("HGI").  After the bankruptcy filing, FBT moved to excuse the Keeper from turning over the Property to the Debtor as 11 U.S.C. § 543 requires.[6]  FBT and the Debtor compromised that motion by allowing HGI to continue to manage the Property, including collecting all rents.  A consent order ("the Keeper Order") memorialized their agreement and obligated the Debtor to make adequate protection[7] payments to FBT:

1. $11,000 monthly beginning in September 2020, to be disbursed by HGI from rents it collects;[8] and

---

[5] *First Bank & Trust v. Redfish Commons, LLC*, case no. 127,417, 23rd Judicial District Court, Ascension Parish, Louisiana.

[6] Motion to Excuse Keeper pursuant to 11 U.S.C. § 543(d)(1), P-20.

[7] FBT has a security interest in the Debtor's collected rents [Proof of Claim 3, FBT Exhibit 4], which is *cash collateral* as defined in 11 U.S.C. § 363(a).  Under section 363(e), a debtor-in-possession using cash collateral must provide "adequate protection" to entities with an interest in it to protect against depreciation of the value of collateral during the pendency of the automatic stay.  *United Sav. Association of Texas v. Timbers of Inwood Forest Associates., Ltd.*, 484 U.S. 365, 370, 108 S.Ct. 626, 630 98 L.Ed.2d 740 (1988).  Section 361 gives examples of means of providing adequate protection when required:

> When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by—
>
> (1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;
>
> (2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or
>
> (3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

[8] November 19, 2020 Keeper Order, FBT Exhibit 4, p. 2.

    2. The Debtor also agreed to pay additional adequate protection of $6,850 a month beginning in December 2020 "from funds other than revenue generated by the Property."[9]

The Keeper Order also provided that if the Property's net operating income exceeded $10,000 for a given month beginning December 2020, the Debtor could request that HGI, rather than the Debtor, make the additional adequate protection payments of $6,850.[10]

Finally, the Keeper Order required HGI to segregate $30,000 of pre-petition funds to build out additional space for a current tenant, Louisiana Casual Living, LLC.[11]

The Debtor failed to pay adequate protection from December 2020 through March 2021.

## II. ANALYSIS

Bankruptcy Code section 362(a) stays creditors from commencing or continuing actions against the debtor or estate property after a debtor files a bankruptcy. Section 362(d) allows relief from that stay:

> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if—
>
>     (A) the debtor does not have an equity in such property; and
>
>     (B) such property is not necessary to an effective reorganization;
>
> (3) with respect to a stay of an act against single asset real estate under subsection (a), by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the order for relief (or such later date as the court may determine for cause by order entered within that

---

[9] November 19, 2020 Keeper Order, FBT Exhibit 4, p. 3.

[10] *Id.*

[11] *Id.* at p. 4.

90-day period) or 30 days after the court determines that the debtor is subject to this paragraph, whichever is later—

(A) the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or

(B) the debtor has commenced monthly payments that—

(i) may, in the debtor's sole discretion, notwithstanding section 363(c)(2), be made from rents or other income generated before, on, or after the date of the commencement of the case by or from the property to each creditor whose claim is secured by such real estate (other than a claim secured by a judgment lien or by an unmatured statutory lien); and

(ii) are in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate; …[12]

**A.  Burden of Proof**

Section 362(g) allocates the burden of proof on motions for stay relief:

(g) In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section—

(1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and

(2) the party opposing such relief has the burden of proof on all other issues.

Thus, FBT bears the burden of proof on the issue of the Debtor's equity in the Property, with the Debtor bearing the burden on all other issues.

---

[12] 11 U.S.C. § 362(d).  FBT relies on section 362(d)(1) and (d)(2) but not (d)(3), although the Debtor is a single asset real estate debtor and FBT has a secured interest in its immovable property.  The Debtor filed a plan on December 3, 2020, more than 90 days after entry of the motion for relief and made monthly adequate protection payments for only two months: October and November 2020.  The Debtor has not made any other agreed adequate protection payments for December 2020 through the date of this opinion.

**B. Cause for Relief from Stay under Section 362(d)(1)**

FBT argues that the Debtor's failure to make any adequate protection payments for December 2020 through March 2021 is cause to lift the stay under section 362(d)(1). The Debtor offered no explanation for its failure to make the agreed monthly $11,000 adequate protection payments from December 2020 through March 2021. It responds with an argument addressing only the $6,850 additional adequate protection payments. The Debtor contends those payments should not be due until after each month ends because until then, it will not have had an opportunity to determine whether the strip shopping center's net operating income exceeds $10,000, triggering its right to request HGI to make the payment.

The Debtor's failure to pay any adequate protection for four months is cause for stay relief. Its argument that it should have additional time to calculate monthly net income is not persuasive. It failed to make the basic monthly adequate protection payments and whether the rental income enabled Debtor to request HGI to make the additional $6,850 payments does not explain or excuse its earlier defaults.

The negotiated Keeper Order requires adequate protection payments on the third day of each month. It does not allow extra time for the Debtor to review income reports (whatever that process may involve). And in any case, the Debtor's agreement to pay $11,000 in December 2020 and January, February and March 2021 was not contingent on the shopping center's net income.

Section 362(d)(1) provides that lack of adequate protection is cause for relief from the automatic stay. The Debtor without doubt has failed to provide adequate protection to FBT despite its agreement to do so. For these reasons, cause exists to lift the stay under section 362(d)(1).

**C. Section 362(d)(2)**

Even if FBT did not establish cause for stay relief under section 362(d)(1), it did prove that it is entitled to relief under Bankruptcy Code section 362(d)(2).

### 1. Equity under Section 362(d)(2)(A)

FBT's proof of claim recites that as of the petition date, the Debtor owed it $3,427,423.10 in principal, interest, late charges and fees.[13] At the hearing, FBT's representative, Jim Noel, testified that the debt now totals $4,152,102.43, excluding postpetition attorneys' fees.[14] FBT orally accepted the debtor's scheduled value of $3,34,105.65[15] for the purposes of this motion at the initial hearing on March 3, 2021, seemingly leaving no equity in the Property.

No direct evidence of the Property's value was admitted in evidence, though Mr. Noel testified that FBT's February 2021 appraisal values the Property at $4,170,000.00.[16] But even assuming, without finding, that the Property is worth $4,170,00.00, the Debtor's equity is negligible given the amount it owes FBT, which increases daily with interest and FBT's postpetition attorneys' fees.

### 2. Effective Reorganization under Section 362(d)(2)(B)

Lack of equity alone does not entitle FBT to relief from the automatic stay under Bankruptcy Code section 362(d)(2). The Debtor also must prove its prospects for an effective

---

[13] Proof of Claim 3, FBT Exhibit 4. The debtor has not objected to FBT's claim.

[14] This includes a postpetition credit for $52,000 in payments and the addition of interest at the default rate of 14.5%, though the court does not address FBT's entitlement to default interest. The $52,000 credited comprises payments made pursuant to the Keeper Order and includes a $30,000 payment HGI made and $22,000 in adequate protection payments the Debtor made in October and November 2020.

[15] Amended Schedule A, P-31, ¶ 55.

[16] Mr. Noel's testimony regarding value is entitled to little evidentiary weight given the lack of expert corroboration.

reorganization. As the Supreme Court held in *United Sav. Association of Texas v. Timbers of Inwood Forest Associates., Ltd.*[17]:

> Once the movant under § 362(d)(2) establishes that he is an undersecured creditor, it is the burden of the *debtor* to establish that the collateral at issue is "necessary to an effective reorganization." *See* § 362(g). What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect*. This means, as many lower courts, including the en banc court in this case, have properly said, that there must be "a reasonable possibility of a successful reorganization within a reasonable time."[18]

Determining whether a debtor has proven that it has "a reasonable possibility of a successful reorganization within a reasonable time" requires evaluation of facts along with Bankruptcy Code section 1129(a)'s requirements for confirmation.[19] The Debtor fell far short of carrying the burden of proof on this issue.

The Debtor filed an initial disclosure statement[20] and plan of reorganization[21] on December 3, 2020.[22] The proposed plan depends largely on a $3,200,000 loan from Ultegra Financial Partners of Denver, Co. ("Ultegra").[23] The Debtor introduced a May 5, 2021 term sheet from Ultegra discussing a $3,300,000 loan.[24] The Debtor plans to use $300,000 of the loan

---

[17] *United Sav. Association of Texas v. Timbers of Inwood Forest Associates., Ltd.*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988).

[18] *Id.* at 375–76 (emphasis in original) (quoting *U.S. Savings Assoc. of Texas v. Timbers of Inwood Forest Assoc., Ltd. (In re Timbers of Inwood Forest Associates, Ltd.)*, 808 F.2d 363, 370-371, and nn.12-13 (5th Cir. 1987)).

[19] *In re Northwest Timberline Enterprises, Inc.*, 348 B.R. 412, 435 (Bankr. N.D. Tex. 2006).

[20] Disclosure Statement, [P-51].

[21] Plan, [P-52].

[22] First Amended Disclosure Statement, Debtor Exhibit 4; First Amended Plan, Debtor Exhibit 5. The amendments both came *after* FBT moved for stay relief, alleging that the original plan was unconfirmable.

[23] First Amended Disclosure Statement, Debtor Exhibit 4, p. 13, Article V, section C, ¶ 2.

[24] Term Sheet, Debtor Exhibit 1. The amended disclosure statement refers to a $3,200,000 loan, but the term sheet refers to a $3,300,000 loan.

proceeds to pay allowed administrative expenses and priority tax claims after the plan is confirmed. It also plans to use those funds to complete buildouts for existing tenant Louisiana Casual Living, LLC ("LA Casual Living") and a new tenant, BR Mattress Co., LLC ("BR Mattress").[25] It proposes to pay the $2,900,000 balance of the loan proceeds to FBT within 120 days of the confirmed plan's effective date. The proposed plan will pay FBT's substantial remaining claim from the Debtor's rental income.[26]

But the flaw in the Debtor's presentation is that the term sheet is not a firm commitment. Indeed, the initial paragraph recites that it "is intended for discussion purposes only, and does not constitute a direct or indirect agreement or commitment by Ultegra."[27] More telling is that the unsigned term sheet expired without either party's acceptance on March 5, 2021 at 5:30 p.m., before the evidentiary hearing.[28] Thus Ultegra's contribution to an effective reorganization is more chimera than commitment.

The amended plan also anticipates increased rental income from LA Casual Living,[29] as well as rent from a new tenant, BR Mattress. The debtor's representative, Michael Kimble,[30] testified that he believes the increased rental income from LA Casual Living and BR Mattress will allow the debtor to make plan payments. Those expectations are unreasonable or unfounded.

---

[25] First Amended Disclosure Statement, Debtor Exhibit 4, p. 13, Article V, section C, ¶ 2.

[26] First Amended Plan, Debtor Exhibit 5, p. 7, ¶ 3.2.1.

[27] Term Sheet, Debtor Exhibit 1.

[28] *Id*. at p. 5.

[29] The Debtor anticipates receiving increased rent from LA Casual Living after it builds out additional space for the tenant. Amended Disclosure Statement, Debtor Exhibit 4, p. 15, Article VI, section C.

[30] The Debtor has three members: GRC Real Estate, LLC owns 50%, and brothers Michael and Mitchell Kimble each own 25%. List of Equity Security Holders, [P-3].

First, the projected rent increase from LA Casual Living depends on a buildout that the Debtor has not started and lacks the money to fund. Mr. Kimble testified that the buildout for LA Casual Living's expansion will cost more than the $30,000 the Keeper Order reserved for the project in November 2020, though he did not specify the additional amount needed. Kimble testified that the Debtor cannot begin the buildout absent the Ultegra loan. Meanwhile, Mr. Kimble also testified that the Debtor is now allowing LA Casual Living to use the additional space without paying any additional rent.

The Debtor also is counting on rent from a new tenant, BR Mattress, a business Mr. Kimble and his brother control. But BR Mattress does not have a lease with the Debtor nor did the Debtor offer evidence supporting a finding that a lease is in prospect, much less its terms.[31] Michael Kimble testified that he and his brother initially did not want to open a location in the shopping center, instead waiting to assess growth in the market and competition. Whatever the Kimble brothers' reason for deferring the decision, the credible evidence does not support a finding that BR Mattress is likely to become a paying tenant soon.

Mr. Kimble mentioned inquiries from potential new customers (a cigar bar and nail salon) but admitted that no leases are imminent.

The lack of new business is not the only obstacle to an effective reorganization: the Debtor also is having problems with existing tenants. The debtor's largest tenant, MMJL, LLC, notified the Debtor and HGI that it will vacate the premises by March 31, 2021,[32] which will result in a loss of gross monthly rent of $6,1244.99. Evidence that MMJL would not vacate the

---

[31] BR Mattress did lease space in the shopping center in July 2019 – a lease that has since expired – though it never occupied that space.

[32] February 1, 2021 letter from MMJL, LLC, FBT Exhibit 12.

Property by that date was not persuasive.[33] In addition, Top Notch Daiquiris, another current tenant, is in arrears on its rent. It did not pay rent due on December 31, 2020, that was deferred due to the pandemic.

In summary, the evidence does not support a finding that the Debtor's first amended plan will lead to an effective reorganization.

**D. Abandonment**

FBT also seeks abandonment of the Property.[34] Bankruptcy Code section 554 provides for abandonment of estate property:

> On request of a party in interest after notice and a hearing, the court may order the trustee to abandon any property that is burdensome to the estate or that is of inconsequential value and benefit to the estate.[35]

Estate property that is abandoned ceases to belong to the bankruptcy estate and reverts to a debtor, subject to any encumbrances.[36]

The evidence supported a finding that the Property is of inconsequential value to the bankruptcy estate and will be burdensome. Accordingly, the Property will be abandoned.

---

[33] Despite MMJL, LLC's written notice of intent to vacate, Mr. Kimble testified that a tenant representative told him that it wants to extend the lease. The court sustained as hearsay further questioning about those communications. The Debtor offered no other evidence to corroborate Kimble's testimony regarding MMJL's intent to remain in the Property.

[34] When relief from the automatic stay is granted as to property under section 362(d), the creditor can proceed against the property though the property remains property of the bankruptcy estate. Properly ceases to be estate property only when is abandoned. *Killebrew v. Brewer (Matter of Killebrew),* 888 F.2d 1516, 1520 (5th Cir. 1989) (citations omitted).

[35] 11 U.S.C. § 554(b).

[36] 5 COLLIER ON BANKRUPTCY ¶554.02 (16th 2021).

### III. Conclusion

For these reasons, the stay will be lifted pursuant to section 362(d)(1) and (d)(2) and the Property abandoned from the estate. The court need not reach FBT's alternative request for conversion.

Baton Rouge, Louisiana, April 5, 2021.

**s/ Douglas D. Dodd**
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE